**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|                          |   |                              |
|--------------------------|---|------------------------------|
| SAMUEL RYAN,             | : |                              |
|                          | : | Civil Action No. 04-4447(RBK)|
| Petitioner,              | : |                              |
|                          | : |                              |
| v.                       | : | **OPINION**                  |
|                          | : |                              |
| ROY L. HENDRICKS, et al.,| : |                              |
|                          | : |                              |
| Respondents.             | : |                              |

**APPEARANCES:**

Samuel Ryan
New Jersey State Prison
P.O. Box 861
Trenton, NJ  08625
    Petitioner pro se

Carol Marie Henderson, Esq.
Office of the New Jersey Attorney General
Division of Criminal Justice
Appellate Section
P.O. Box 086
TGrenton, NJ  08625
    Counsel for Respondents

**KUGLER**, District Judge

    Petitioner Samuel Ryan ("Petitioner"), a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Administrator Roy L.

Hendricks, the Attorney General of the State of New Jersey, and the Cumberland County Prosecutor.

For the reasons stated herein, the Petition shall be denied.

I. BACKGROUND

A. Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> A Texaco gasoline station in Bridgeton, New Jersey was robbed at gunpoint at approximately 2:00 a.m. on February 21, 1996. Two employees, Gene Munyon and Dustin Poeppel, were in the office. The robber, who was wearing a cap and ski mask and was holding a "shiny" gun, entered the office and fired one shot. The bullet struck Munyon. It traveled through his right forearm, into his neck and then into his jaw. He was left bleeding and with a fractured jaw. The perpetrator took about $100 cash and left.
>
> The gas station employees described the robber as a tall, skinny, light skinned, black man with "beady" eyes. They did not identify any suspects either before or at trial.
>
> At the scene of the crime, the police found a "spent projectile," i.e., the part of the bullet which had been fired from the gun, a shell casing, and a live bullet which had apparently fallen to the floor without having been fired. From this evidence, the police determined that the handgun used in the robbery

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

2

had fired 10 millimeter Hornady brand ammunition.

Stores selling guns or ammunition are permitted to sell them only to customers who display firearms identification cards. The sellers are required to keep a record of the identities of persons buying guns or ammunition. Law enforcement officers generally use handguns which take 9 millimeter ammunition. Handguns using 8 millimeter ammunition are also relatively common. The police knew that guns using 10 millimeter ammunition are relatively rare. Within a day or two after the robbery, they therefore canvassed the local gun shops to learn whether anyone had recently bought 10 millimeter ammunition or a handgun that used that size bullets.

The initial canvass produced no useful leads. But on March 14, 1996, one of the gun store owners reported to the police that someone identifying himself as Jimmy Rhett had purchased 10 millimeter ammunition. The police arrested Jimmy Rhett on a warrant that was outstanding for some other matter. That evening, Jimmy called his brother, Diondray Rhett, at Diondray's apartment while defendant was there watching a Mike Tyson fight. Jimmy Rhett spoke to his brother and then to defendant. A short time after speaking to Jimmy Rhett, defendant left the apartment. Diondray followed him out of the apartment and offered to take him to the police station. The implication of Diondray's testimony is that he wanted defendant to talk to the police to absolve Jimmy from suspicion of complicity in the Texaco robbery. He was a suspect because his name had been used to buy the 10 millimeter ammunition. Defendant refused. As Diondray and defendant were talking outside the building in which Diondray's apartment was located, the police arrived and defendant ran into another building in the apartment complex. The police found him in an apartment in that building, hiding in the crawl space above a closet.

Diondray testified that he had known defendant for a long time and would socialize with him. According to Diondray, he had gone out drinking with defendant both shortly before and shortly after the Texaco robbery. Before the robbery, Diondray had paid for the drinks because defendant had no money. After

3

>    the robbery, defendant paid for the drinks.
>    Apparently surprised that defendant had money to buy
>    their drinks, Diondray asked him, perhaps jokingly,
>    whether he had robbed the Texaco station. Defendant
>    answered, "I had to do what I had to do."
>
>    Diondray also testified that on February 28,
>    1996, after the robbery, he hosted a party that
>    defendant attended. Before leaving the party to fight
>    with another guest, defendant gave a gun to Diondray's
>    nephew, Darnell Holbrook, to hold. Holbrook left with
>    the gun before defendant returned. The police
>    questioned Holbrook about the gun. He still had it in
>    his possession and he delivered it to the police. A
>    State Police ballistics expert identified the gun
>    which was turned over to the police by Holbrook as the
>    one which had fired the shot that wounded the Texaco
>    gas station employee.
>
>    A police informant testified that while he was in
>    a holding cell at the Cumberland County jail after
>    having been arrested on a civil charge of failing to
>    pay child support, he got into a conversation with
>    another occupant of the cell whom he then knew only as
>    "Sam" and whom he later identified as defendant.
>    According to this witness, he and defendant conversed
>    about why each of them was being held. Defendant said
>    that he had been charged with attempted murder in
>    connection with the Texaco robbery. He told the
>    informant that he had fired a shot which struck
>    someone in the arm and then entered the person's head
>    -- a fair approximation of the actual trajectory of
>    the bullet fired at the Texaco employee -- and that he
>    had been caught because he used 10 millimeter bullets,
>    facts which had not been publicly disclosed.

(Answer, Ex. 5, Opinion of Appellate Division at 2-5 (June 8, 1999).)

B.  <u>Procedural History</u>

After a trial by jury in the Superior Court of New Jersey, Law Division, Cumberland County, on Indictment No. 96-04-0511, Petitioner was convicted of armed robbery (N.J.S.A. 2C:15-1),

4

attempted murder (N.J.S.A. 2C:11-3), second-degree and fourth-degree aggravated assault (N.J.S.A. 2C:12-1(b)(1) and (b)(4)), possession of a firearm for an unlawful purpose (N.J.S.A. 2C:39-4(a)), and possession of a handgun without a permit (N.J.S.A. 2D:39-5(b)).  Pursuant to New Jersey's "Three-Strikes" law, N.J.S.A. 2C:43-7.1(a), Petitioner was sentenced to concurrent extended terms of life imprisonment without parole for robbery and attempted murder, and to lesser concurrent terms of imprisonment on the other offenses.  On direct appeal, the Superior Court, Appellate Division, affirmed the convictions, but remanded for resentencing.  (Answer, Ex. 5.)  On June 24, 1999, the trial court re-sentenced Petitioner to the same aggregate sentence.  (Answer, Ex. 3.)  The Supreme Court of New Jersey denied certification on February 29, 2000.  State v. Ryan, 163 N.J. 78 (2000).

Petitioner has filed numerous unsuccessful state petitions for post-conviction relief ("PCR"), including petitions that challenged both this conviction and a separate conviction with respect to a robbery at a WaWa convenience store.[2]  In 2004,

---

[2] Pursuant to Cumberland County Indictment No. 96-04-0475, with respect to the WaWa robbery, Petitioner was charged with first degree armed robbery, two counts of fourth degree aggravated assault, two counts of possession of a weapon for an unlawful purpose, third degree unlawful possession of a handgun, and two counts of terroristic threats.  On February 10, 1997, a jury convicted Petitioner on all counts.  On May 16, 1997, the trial court sentenced Petitioner to an aggregate sentence of 60 years'

while Petitioner was pursuing state PCR relief, he filed this federal Petition, asserting various claims of ineffective assistance of trial and appellate counsel. Pursuant to Petitioner's request, this Court entered an Order [7] staying this matter until resolution of the then-pending state PCR proceedings, and directing Petitioner to apply to re-open this matter within 30 days after exhaustion of his claims in the pending state proceedings, upon pain of dismissal of any unexhausted claims. By Order [12] entered September 7, 2011, this Court re-opened this proceeding and directed Respondents to answer.[3] Briefing is complete and this matter is now ready for decision.[4]

---

imprisonment, with a 20-year parole disqualifier. (Answer, Ex. 7.)

[3] Respondents assert that Petitioner did not timely move to re-open this matter, (Answer at 14), but have not sought dismissal on that ground, and have responded to Petitioner's claims on the merits.

[4] In his Reply in support of the Petition, filed in May 2012 after Respondents had filed their Answer, Petitioner requests that this Court consider "new" legal claims, not asserted in his Petition. Petitioner does not clearly explain these purported "new" claims. In any event, Petitioner was provided the Notice [3] required by Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), in September 2004 and he made no effort to timely amend the Petition, either before or after this matter was stayed. This Court will not consider any new claims asserted in the Reply brief. See, e.g., Bell v. City of Philadelphia, 275 F.App'x 157, 160 (3d Cir. 2008) (noting that a plaintiff may not amend his pleading through a brief in opposition to a dispositive motion; rather, the proper procedure is to amend the complaint in accordance with Fed.R.Civ.P. 15), cited in Barber v.

6

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially

---

Hollingsworth, Civil No. 13-3118, 2013 WL 5719471, *1 n.1 (D.N.J. Oct. 18, 2013). See also Salaam v. Brown, Civil No. 04-1617, 2006 WL 2056785, *6-*7 (D.N.J. July 21, 2006) (refusing to consider new claims raised in habeas petitioner's reply brief after expiration of § 2254 one-year limitations period).

7

indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II), cited in Ely v. Erickson, 712 F.3d 837 (3d Cir. 2013).

A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. See also Moore v. DiGuglielmo, 489 F.App'x 618, 624 n.2 (3d Cir. 2012) (noting the same). To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Williams, 529 U.S. at 409. "This standard … is 'difficult to meet': To obtain habeas corpus relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"

Metrish v. Lancaster, 133 S.Ct. 1781, 1786-87 (2013) (quoting Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011)). In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999), cited in Hardcastle v. Horn, 368 F.3d 246, 256 n.3 (3d Cir. 2004).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)), cited in Wright v. Vaughn, 473 F.3d 85, 91 (3d Cir. 2006). With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment. See Holloway v. Horn, 355 F.3d 707, 718 (3d Cir. 2004); Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001). In such instances, "the federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA." Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001) (citing McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999)). "However, § 2254(e)(1) still mandates that the state court's factual determinations are presumed correct unless rebutted by clear and convincing

evidence."  Simmons v. Beard, 581 F.3d 158, 165 (3d Cir. 2009).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent."  Priester v. Vaughn, 382 F.3d 394, 397-98 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002) and Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Carrascosa v. McGuire, 520 F.3d 249, 255 & n.10 (3d Cir. 2008).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

## III. ANALYSIS

Petitioner asserts that his trial counsel failed to provide constitutionally adequate assistance in the following particulars: (a) defense counsel failed to perform a proper investigation to determine whether there were exculpatory witnesses, (b) defense counsel failed to call exculpatory witnesses known to him, and (c) defense counsel failed to object to the jury charge regarding co-defendant credibility, including the fact that the co-defendant was offered a lenient prison sentence in exchange for testimony implicating Petitioner.[5] Petitioner also contends that his appellate counsel failed to provide constitutionally adequate assistance (a) by failing to raise a claim of ineffective assistance of trial counsel, (b) by failing to raise meritorious issues, and (c) by failing to dispute "serious factual disputes within the trial transcript."[6]

---

[5] There was no co-defendant in the criminal case at issue here, the Texaco robbery under Indictment No. 96-04-0511. (Answer, Ex. 1, Indictment No. 96-04-0511.) Petitioner may be confusing this matter with his other criminal conviction arising out of the Wawa robbery. Accordingly, Petitioner is not entitled to relief on this claim.

[6] Petitioner fails to identify the alleged exculpatory witnesses or to describe their purported testimony. In addition, Petitioner fails to describe the allegedly meritorious claims that appellate counsel should have raised or to identify the purported factual disputes in the trial transcript. (Petition, Rider 5-A.)

(Petition, Rider 5-A.)

In a state post-conviction relief proceeding filed in April 2000, Petitioner raised the claims that trial counsel had failed to conduct a sufficient investigation and had failed to call exculpatory witnesses. (Answer, Exs. 15, 25, 30.) The state PCR court summarily denied relief, without an evidentiary hearing. In short, the PCR court found that Petitioner had failed to present any evidence of a deficient investigation or that any of the referenced witnesses could provide exculpatory evidence. (Answer, Exs. 55 (Transcript of Oct. 13, 2000), 10 (Order (Nov. 9, 2000)).) Petitioner appealed, primarily on the ground of ineffective assistance of post-conviction relief counsel.[7] The Appellate Division affirmed the denial of post-conviction relief, finding that the lack of specificity in the record before the trial court and before the Appellate Division

---

[7] On appeal of the denial of PCR relief, Petitioner's counsel raised only the issue of ineffective assistance of PCR counsel. Petitioner, in a pro se brief, addressed previously raised claims of ineffective assistance and raised new issues of ineffective assistance of trial and appellate counsel, including claims regarding the alleged failure of trial counsel to object to the jury charge on the credibility of witnesses facing criminal charges, and the failure of appellate counsel to raise certain issues relating to the composition of the jury and the lack of a jury charge on cross-racial identification (relating to the informant's identification of Petitioner as the person who confessed to him). (Answer, Ex. 31 (Petitioner's pro se brief on appeal of denial of PCR relief).) The Appellate Division did not specifically address the issues raised on appeal in Petitioner's pro se brief. (Answer, Ex. 12 (Appellate Division opinion).)

12

precluded any finding of ineffective assistance. (Answer, Ex. 12 (Opinion of Appellate Division (Dec. 2, 2002)).) On September 8, 2003, the Supreme Court of New Jersey denied certification. State v. Ryan, 177 N.J. 573 (2003).

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) (emphasis added) (citations omitted), cited in Ross v. Varano, 712 F.3d 784, 797 (3d Cir. 2013).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). With respect to the "performance" prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than

13

complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91. With respect to the "prejudice" prong, a "reasonable probability" of prejudice is "a probability sufficient to undermine confidence in the outcome." Strickland at 694. Thus, counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Id. at 697.

If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland. See Albrecht v. Horn, 485 F.3d 103, 139 (3d Cir. 2007).

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. Evitts v. Lucey, 469 U.S. 387 (1985). The Strickland standard

for effective assistance of counsel applies to appellate counsel. See Smith v. Robbins, 528 U.S. 259, 285-86 (2000); Boggs v. Diguglielmo, 264 F.App'x 165, 167-68 (3d Cir. 2008). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

The Supreme Court has recently emphasized the deferential nature of federal habeas review of state court decisions applying the Strickland standard.

> Establishing that a state court's application of Strickland was unreasonable under § 2254 is all the more difficult. The standards created by Strickland and § 2254 are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254. When § 2254 applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington v. Richter, 131 S.Ct. at 788 (citations omitted).

Here, before the state courts, Petitioner identified only two potentially exculpatory witnesses: his sister, who could

15

allegedly testify regarding the time Petitioner left her home on the night of the robbery, and another occupant of his holding cell, who could allegedly testify that Petitioner never talked to the jailhouse informant Mr. Williams. Both issues were developed before the trial court and there is nothing in the record to suggest deficient performance on the part of trial counsel. To the contrary, the trial court determined that the proffered testimony of Petitioner's sister did not, in fact, provide an alibi, and Petitioner's counsel determined after interviewing the other holding-cell witness that he would not be called. (Answer, Ex. 52 (Trial Transcript of Oct. 1, 1997, at 85-103).) Petitioner did not present any evidence or testimony to the PCR court (or to this Court), that would suggest that either witness could have provided exculpatory testimony. Accordingly, Petitioner has failed to demonstrate that the decision of the state court was either contrary to or an unreasonable application of controlling Supreme Court precedent, or that the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented there. Petitioner is not entitled to relief on these claims.

It appears that Petitioner has failed to exhaust his other claims of ineffective assistance of counsel, which he raised only on appeal of the denial of PCR, and which the Appellate

Division did not address in its decision. Nevertheless, this Court will exercise its discretion under § 2254(b)(2) to deny relief as to those claims. As Petitioner has failed to demonstrate, either before the PCR court or this Court, that his trial counsel failed to meet the Sixth Amendment standard for effective assistance, he cannot demonstrate that appellate counsel was deficient for failing to raise that claim in state court.

Moreover, Petitioner has failed even to identify the allegedly meritorious claims that should have been raised on appeal or the alleged factual disputes in the trial transcript. To the extent that he seeks relief based on the claims he asserted on appeal of the denial of PCR relief, regarding the racial composition of the jury and regarding a jury charge on cross-racial identification, he has failed to present any evidence or argument that would suggest any ground for relief with respect to those claims. These claims are so lacking in substance that it would not be appropriate to delay this matter further for Petitioner to return to state court. In light of the cumulative evidence against Petitioner, it is inconceivable that he could establish the second prong of the Strickland standard, prejudice, based upon these claims. Cf. Bronshtein v. Horn, 404 F.3d 700, 728 (3d Cir. 2005) ("We would permit Bronshtein to attempt on remand to establish a reason to excuse

his procedural default, but we find it unnecessary to do so because it is apparent that the claims in question lack merit. Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here."). See also Granberry v. Greer, 481 U.S. 129, 135 (1987) (permitting denial of unexhausted claims under § 2254(b)(2) "if it is perfectly clear that the applicant does not raise even a colorable federal claim"), cited in Lambert v. Blackwell, 134 F.3d 506, 514-15 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001).

For all the foregoing reasons, the Petition will be denied.

## IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citation omitted), cited in Eley v. Erickson, 712 F.3d 837, 845

(3d Cir. 2013).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right and this Court will not issue a certificate of appealability.

V. <u>CONCLUSION</u>

For the reasons set forth above, the Petition shall be denied. An appropriate order follows.

s/Robert B. Kugler<br>
Robert B. Kugler<br>
United States District Judge

Dated: January 21, 2014